UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Bryan Elton Hearn

        v.                          Civil No. 21-cv-842-SE
                                    Opinion No. 2022 DNH 107
Kilolo Kijakazi, Acting Commissioner,
Social Security Administration


                        O R D E R

        Bryan Elton Hearn challenges the denial of his application
for children's insurance benefits and disability insurance
benefits pursuant to 42 U.S.C. § 405(g). An administrative law
judge ("ALJ") found that Hearn's several medically determinable
impairments were not severe under the Social Security
regulations as of September 30, 2014, when Hearn last met the
insured status requirements of the Social Security Act.
Accordingly, the ALJ concluded that Hearn was not disabled as
defined by the regulations. See 20 CFR § 404.1505(a).

        Hearn moves to reverse the Acting Commissioner's decision.
He argues that the ALJ erred in finding that his impairments
were not severe by relying on medical opinions that were not
based on his entire medical record and by improperly assessing
purported retrospective opinions submitted by treating
providers. The Acting Commissioner moves to affirm, arguing that
the ALJ's decision was supported by substantial evidence. For

the reasons discussed below, the court grants the Acting
Commissioner's motion to affirm and denies Hearn's motion to
reverse.

## Standard of Review

For purposes of review under § 405(g), the court "is
limited to determining whether the ALJ deployed the proper legal
standards and found facts upon the proper quantum of evidence."
Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord
Sacilowski v. Saul, 959 F.3d 431, 437 (1st Cir. 2020). The court
defers to the ALJ's factual findings if they are supported by
substantial evidence. Biestek v. Berryhill, 139 S. Ct. 1148,
1153 (2019). Substantial evidence is "more than a mere
scintilla," id., and exists, even if the record could support a
different conclusion, when "a reasonable mind, reviewing the
evidence in the record as a whole, could accept it as adequate
to support [the ALJ's] conclusion," Irlanda Ortiz v. Sec'y of
Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); accord
Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

In determining whether a claimant is disabled, the ALJ
follows a five-step sequential analysis, "such that the answer
at each step determines whether progression to the next is
warranted." Sacilowski, 959 F.3d at 433; 20 C.F.R. §
404.1520(a)(4). The claimant "has the burden of production and

proof at the first four steps of the process." Sacilowski, 959 F.3d at 433. At the first three steps, the claimant must prove that (1) he is not engaged in substantial gainful activity; (2) he has a severe impairment; and (3) the impairment meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii).

If the claimant meets his burden at the first two steps of the sequential analysis, but not at the third, the ALJ assesses the claimant's residual functional capacity ("RFC") before proceeding to Step Four. Id. § 404.1520(e). RFC measures the maximum amount a person can do in a work setting despite the limitations caused by his impairments. Id. § 404.1545(a)(1). At Step Four, the claimant must establish that his RFC is insufficient to perform any of his past relevant work. Id. § 404.1520(a)(4)(iv). If the claimant can perform his past relevant work, the ALJ will find that the claimant is not disabled. See id. § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ proceeds to Step Five, in which the Social Security Administration has the burden of showing that jobs exist in the economy which the claimant can do in light of the RFC assessment as well as the claimant's age, education, and work experience. See id. § 404.1520(a)(4)(v). If such jobs exist, the claimant is not disabled. Id. If they do not, he is disabled. Id.

<u>Background</u>

A detailed factual background can be found in Hearn's statement of facts (doc. no. 5-2) as supplemented by the Acting Commissioner's statement of facts (doc. no. 8) and in the administrative record (doc. nos. 3 & 4). The court provides a brief summary of the case here.

Hearn has a history of anxiety and depressive disorder dating back to 2003, when he was 12 years old. By April 2005, he had been diagnosed with panic disorder, anxiety disorder, a learning disorder, attention deficit hyperactivity disorder ("ADHD"), and depression. He was also treated for opioid addiction beginning in 2012. He sought treatment for his mental health struggles at various times through 2019.

On March 17, 2020, Hearn filed applications for children's insurance benefits and disability insurance benefits.[1] In both applications, he alleged a disability onset date of January 1, 2003.

The Social Security Administration denied Hearn's applications at the initial level and again after a request for reconsideration. Hearn then requested a hearing in front of an

---

[1] To be entitled to children's insurance benefits, a claimant must be under a disability which began before age 22, among other requirements. <u>See</u> 42 U.S.C. § 402(d)(1).

ALJ. Prior to the hearing, Hearn amended his disability onset
date from January 1, 2003, to January 1, 2013.[2]

On January 11, 2021, the ALJ held a hearing. Hearn, who was
represented by an attorney, appeared and testified.

On January 29, 2021, the ALJ issued an unfavorable
decision. He found that Hearn last met the insured status
requirements of the Social Security Act on September 30, 2014
and had not engaged in substantial gainful activity between then
and the amended alleged onset date. At Step Two, the ALJ found
that Hearn had several medically determinable impairments,
including opioid use disorder, ADHD, generalized anxiety
disorder, and mood/depressive disorder. The ALJ found, however,
that these impairments individually or in combination were not
severe under the Social Security regulations. For that reason,
the ALJ concluded the analysis at Step Two and found that Hearn
was not disabled.

In making his Step Two determination, the ALJ relied on and
found persuasive the opinions of two state agency psychological
consultants, William Jamieson, Ph.D. and Craig Stenslie, Ph.D.
Both doctors opined that Hearn did not have any severe mental
impairments. The ALJ stated that both doctors' opinions were

---

[2] Hearn attained the age of 22 on January 8, 2013, which
means that his period of disability for purposes of child
insurance benefits was January 1, 2013, through January 8, 2013.

consistent with Hearn's medical records and treatment notes,
which showed minimal health treatment or reported symptoms for
Hearn during the relevant time period of January 1, 2013 and
September 30, 2014.

The ALJ acknowledged that additional records were admitted
into evidence after Dr. Jamieson and Dr. Stenslie issued their
opinions. In addressing those records, the ALJ stated:

> However, in light of additional medical records
> submitted after the dates of [Dr. Jamieson's and Dr.
> Stenslie's] reviews from the time period around the
> date last insured, and viewing the evidence in the
> light most favorable to the claimant, the undersigned
> finds the medical records reflect medically
> determinable impairments of ADHD, mood disorder,
> generalized anxiety disorder and opioid abuse
> disorder, with no more than mild symptoms and mild
> resulting functional limitations.

Admin. Rec. at 22. Thus, he concluded that the additional
medical records did not show severe impairments.

The ALJ also addressed and found unpersuasive the opinions
of two of Hearn's treating providers: social worker Derek Price
and psychiatric-mental health nurse practitioner Sarah Robinson.
Both providers opined that Hearn had moderate to marked
limitations because of his anxiety, depression, and ADHD. The
ALJ did not credit either opinion because both reflected Hearn's
"present level of functioning, and not his functioning during
the period at issue more than 6 years ago." Admin. Rec. at 22.
The ALJ also noted that the opinions indicated that Hearn's

6

mental health issues had "existed at the same level for the past 'several years' or the past '7 years'." Id. Nonetheless, the ALJ found that the medical records did not support that assertion. Id.

On October 1, 2021, the Appeals Council denied Hearn's request for review, making the ALJ's decision the final decision of the Acting Commissioner for purposes of judicial review. 20 C.F.R. § 422.210(a); see Sims v. Apfel, 530 U.S. 103, 107 (2000). This action followed.

## Discussion

Hearn argues that the ALJ erred in his Step Two determination that Hearn did not have a severe impairment or combination of impairments. He argues that it was error to rely on Dr. Jamieson's and Dr. Stenslie's opinions because neither of them reviewed treatment records from Hearn's medical care providers that were added to the record after they issued their opinions. He also challenges the ALJ's evaluation of Price's and Robinson's opinions, both of which support Hearn's disability claims.

## I.   Additional Medical Records

Hearn argues that Dr. Jamieson's and Dr. Stenslie's opinions do not provide substantial evidence to support the

ALJ's Step Two determination because neither doctor had access to or reviewed medical records submitted after they issued their opinions. See doc. no. 5-1 at 3, 4. Hearn contends that the ALJ cannot rely on non-examining consultants' opinions based on an incomplete record.

It is true that it "can be reversible error for an ALJ to rely on an opinion of a non-examining consultant who has not reviewed the full medical record." Wall v. Berryhill, No. 18-CV-277-PB, 2019 WL 2723887, at *4 (D.N.H. June 27, 2019). But "the fact that an opinion was rendered without the benefit of the entire medical record does not, in and of itself, preclude an ALJ from giving that opinion significant weight." Berthiaume v. Saul, No. 18-CV-557-JL, 2020 WL 1933947, at *3 (D.N.H. Apr. 22, 2020) (quotation and alteration omitted). An ALJ may rely on an outdated opinion so long as he or she determines that the additional medical evidence "does not establish any greater limitations, or where the medical reports of claimant's treating providers are arguably consistent with, or at least not clearly inconsistent with, the reviewer's assessment." Wall, 2019 WL 2723887, at *4 (quotation omitted).

As discussed above, the ALJ acknowledged in his decision that neither Dr. Jamieson nor Dr. Stenslie had access to the entire medical record. Admin. Rec. at 22. The ALJ addressed the additional medical records and found that they show certain

medically determinable impairments and "no more than mild symptoms and mild resulting functional limitations." Id. Mild functional limitations do not meet the Step Two standard for a severe medically determinable impairment. See 20 C.F.R. § 416.920 (stating that a severe impairment is one that "significantly limits your physical or mental ability to do basic work activities").

Hearn has not shown that the ALJ erred in relying on Dr. Jamieson's and Dr. Stenslie's opinions. He does not point to anything in the additional 16 pages of medical records that is inconsistent with either opinion. See Venus v. Berryhill, No. 17-CV-482-PB, 2019 WL 157296, at *14 (D.N.H. Jan. 9, 2019) (declining "to address claimant's incomplete-record claim" where he "baldly asserts that the record before [the state agency consultant] was incomplete, but goes no further and does not direct the court to any specific post-opinion evidence that materially changed the record before" the consultant); see also Wall, 2019 WL 2723887, at *4. Moreover, the records, nearly all of which are from medical visits before the alleged disability onset date, contain minimal mental-status findings and consistently show Hearn doing well on Suboxone. See generally Admin. Rec. at 698-703. Although the ALJ might have been more detailed in his analysis, the decision shows that he considered the additional medical evidence and concluded that it was not

inconsistent with Dr. Jamieson's and Dr. Stenslie's opinions. The record supports that conclusion.

For these reasons, Hearn has not shown that the ALJ erred in relying on Dr. Jamieson's and Dr. Stenslie's opinions.


II.   Treating Providers

Hearn also challenges the ALJ's evaluation of Price's and Robinson's opinions. As mentioned above, both providers opined that Hearn had moderate to marked limitations because of his anxiety, depression, and ADHD. The ALJ did not find either opinion persuasive. He concluded that the opinions, which were both offered in 2020, reflected Hearn's present level of functioning only, and not his past level of functioning during the relevant period between January 2013 to September 2014.

Hearn contends that the ALJ's conclusion was in error. He notes that he had been treated at Price and Robinson's facility, the Seacoast Mental Health Center ("Seacoast Center"), several years prior to 2020. Hearn also states that Robinson was aware of his prior treatment with other providers during the relevant disability period. Hearn contends that, therefore, the ALJ should have considered Price's and Robinson's opinions to encompass Hearn's impairments and functional limitations back through 2013 and 2014.

Put another way, Hearn contends that his treating providers submitted retrospective opinions about his limitations during the relevant period between January 2013 and September 2014. In the context of a social security review, a retrospective opinion "provides a diagnosis or assesses a claimant's condition during the covered period, that is, before the claimant's last insured date." Martin v. Acting Comm'r, Soc. Sec. Admin., No. 21-CV-416-SE, 2022 WL 1463055, at *4 (D.N.H. Apr. 8, 2022), report and recommendation adopted sub nom. Martin v. US Soc. Sec. Admin., No. 21-CV-416-SE, 2022 WL 1462980 (D.N.H. May 6, 2022). An ALJ may accept a retrospective opinion "to the extent it substantiates limitations that existed during the covered period and is corroborated by medical evidence generated during that time" or an ALJ may reject an opinion that does not meet that standard. Id.; Scott v. Saul, No. 19-12552-LTS, 2021 WL 735851, at *9 (D. Mass. Feb. 25, 2021).

The treating providers' opinions do not explicitly pertain to the covered period. Even if they did, the ALJ found the opinions unpersuasive because Hearn had not been treated at the Seacoast Center, where the treating providers practice, during the relevant period. He ended treatment there in 2006 and did not resume treatment until 2016, after the relevant period. The ALJ also compared the treating providers' opinions to medical treatment notes during the relevant period and determined that

they were inconsistent. During the relevant period, treatment
notes showed normal mental-status examination results and showed
that Hearn's symptoms were controlled with medication.

The ALJ properly assessed the purported retrospective
opinions provided by the treating providers and supportably
found that the opinions were entitled to no weight as to Hearn's
level of functioning during the relevant period. Therefore,
Hearn has not shown that the ALJ erred in his assessment of the
treating providers' opinions.


III. Hearn's Subjective Complaints

Hearn states in cursory fashion that he testified that he
experienced symptoms and limitations that were consistent with
his treating providers. Doc. no. 5-1 at 4. To the extent that
Hearn intended to argue that the ALJ erred in evaluating his
subjective complaints, that argument is not sufficiently
developed. See United States v. Zannino, 895 F.2d 1, 17 (1st
Cir. 1990). Even if it were, the ALJ adequately explained why he
found Hearn's testimony concerning his symptoms to be "not
entirely consistent with the medical evidence and other evidence
in the record." Admin. Rec. at 20. Hearn has not shown that the
ALJ erred in evaluating Hearn's subjective complaints.

Conclusion

For the foregoing reasons, the Acting Commissioner's motion to affirm (document no. 7) is granted. Hearn's motion to reverse (document no. 5) is denied. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____

Samantha D. Elliott
United States District Judge


September 1, 2022

cc:  Counsel of Record